# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 24-00064-EG |
| Brian Lucas and Ernestine Lucas, | Chapter 13 |
| Debtor(s). | **ORDER SANCTIONING ATTORNEY** |

**THIS MATTER** is before the Court on the Order Scheduling Hearing on Correspondence Received from Debtors ("Order") entered on August 5, 2024.[1]  On July 31, 2024, the Court received letter from Brian and Ernestine Lucas ("Debtors"), which was docketed as Correspondence and Request for Moratorium and to Terminate Services of Counsel (the "Correspondence").[2]  The Correspondence asserts, among other things, that Debtors' prior counsel of record, Jason T. Moss ("Moss") of Moss & Associates Attorneys, P.A. (the "Firm"), failed to disclose to them that their mortgage payments were being added to an amended conduit plan that Moss filed on their behalf without their consent, which was later confirmed by the Court.  In the Correspondence, Debtors also requested to terminate their representation by Moss and the Firm in this bankruptcy case. That relief was granted by order dated August 2, 2024.[3]  Debtors also

---

[1] ECF No. 36, entered Aug. 5, 2024.
[2] ECF No. 30, filed July 31, 2024. The Correspondence requested that the Court "suspend the conduit payment plan for our case indefinitely or for the months of June, July and August."  The Court issued a separate Order and Notice of Hearing Regarding Moratorium of Plan Payments Sought in Correspondence (the "Request for Moratorium") and scheduled it for the same date as the other hearing. As a result of the dismissal of the case as announced in Court, the Request for Moratorium was deemed moot.
[3] ECF No. 34. Debtors attached to the Correspondence a copy of a letter to Moss, dated July 25, 2024, and signed by both Debtors (the "Termination Letter"), stating that "we have decided to terminate our current representation agreement with you immediately" and "[w]e will be seeking legal counseling elsewhere" due to the Firm's failure to handle their case with "due diligence and care" and Moss's failure to communicate with them due to continuing to reschedule phone call appointments. Debtors further assert in the Correspondence that after the Firm acknowledged receipt of the Termination Letter, a non-attorney from the Firm sent Debtors a proposed consent order for their signature relieving the Firm from representing them. Debtors allege the proposed consent order did not accurately set forth the circumstances surrounding the reason for the termination; accordingly, they refused to sign it and filed the Correspondence to alert the Court of Moss's conduct and issues arising in the case.

requested a moratorium of their plan payments while they sought representation from other counsel. That request was rendered moot by Debtors' subsequent voluntary dismissal of the case.

The Order scheduled a hearing for September 10, 2024, to hear from Debtors and Moss as to the circumstances surrounding the confirmation of Debtor's Chapter 13 Plan and the allegations raised in the Correspondence, to determine what relief Debtors were requesting and whether any such relief should be granted. Among other things, the Order further put Moss on notice that at the hearing the Court would consider whether (a) Moss obtained the proper authority to file the amended Plan and Pay Increase Stipulation, complied with the requirements of SC LBR 9011-4, and/or in any way violated provisions of the Bankruptcy Code, Bankruptcy Rules (including Bankruptcy Rule 9011 or 11 U.S.C. § 526), and/or any applicable rule of professional conduct; (b) grounds existed for Debtors to seek that the confirmed Chapter 13 Plan be vacated or the case dismissed; (c) sanctions should be imposed on Moss; and/or (d) any other relief was warranted. Debtors; Moss; Peter Korn on behalf of the Firm; Debtor's current counsel, Paul Held ("Held");[4] counsel for U.S. Bank Trust Company, National Association aka PHH Mortgage Corporation ("PHH");[5] the Chapter 13 Trustee ("Trustee") and her counsel; and the Assistant United States Trustee ("UST") were all in attendance at the hearing.

On the same date as the hearing, the Court also heard the Motion to Reconsider Order Confirming Conduit that Debtors filed with the assistance of their current counsel. After conferring with counsel, the Chapter 13 Trustee, and counsel for PHH, Debtors announced at the hearing that they wished to have their case dismissed so they could refile with the representation of new counsel. On September 13, 2024, they filed a Motion to Dismiss, which was granted on

---

[4] Held filed a Notice of Appearance and Request for Notice on behalf of Debtors on September 9, 2024 (ECF No. 45).
[5] *See* Proof of Claim 15-1.

2

September 16, 2024.[6] The order dismissing Debtors' case provides that the case would remain open for 70 days to allow the United States Trustee time to conduct discovery related to Moss's actions[7] and in it, the Court further retained jurisdiction to consider and rule on issues related to the imposition of sanctions.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157(b)(2), 1334, and Local Civil Rule 83.IX.01 DSC. Based on the findings of fact as set forth below, the testimony provided at the hearing, and the arguments of the parties, the Court makes the following findings of fact and conclusions of law:

## FACTUAL BACKGROUND

Debtors, with assistance of the Firm and using the CM/ECF credential of Moss, as their original counsel, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on January 8, 2024 ("Petition Date").[8] They filed their Schedules, Statements, and Chapter 13 Plan ("First Plan") on January 13, 2024.[9] On Schedule A, Debtors disclosed ownership of property at 3303 Lee Altman Drive, Dalzell, South Carolina 29040 (the "Property"), which is shown as their primary residence with an estimated value of $160,000.00. On Schedule D, Debtors listed PHH as their mortgage creditor with a claim of $74,879.00, secured by the Property, and indicated that an arrearage of $2,200.00 would be paid through the First Plan. On Schedule J, Debtors listed a monthly mortgage payment expense of $1,036.00.

The First Plan provided that Debtors would make ongoing monthly mortgage payments directly to PHH and cure the arrearage of $2,200.00 (through December of 2023) through the plan

---

[6] ECF No. 51.
[7] At the hearing, Moss also indicated that he wanted to engage in discovery regarding any further action against him or his firm, which he is certainly entitled to for any further relief sought.
[8] ECF No. 1. All filings thereafter presented to the Court on Debtors' behalf utilized Moss' CM/ECF credentials.
[9] ECF Nos. 10, 11, 12.

3

payments to the Trustee. As of the Petition Date, Debtors were at least two months behind in their payments to PHH, having failed to pay the November 1, 2023, and December 1, 2023 payments. According to Debtors, they made their January 1, 2024 payment directly to PHH at the end of the month after Debtor Brian Lucas received his worker's compensation payment.[10] PHH filed its proof of claim on February 28, 2024, which asserts a secured claim of $76,053.32, with an arrearage as of the date of the petition of $4,535.60.[11] While not entirely clear, PHH's proof of claim appears to indicate that Debtors were at least three months behind on their payments as of the Petition Date. The Mortgage Proof of Claim Attachment indicates that Debtors' total monthly payment on the mortgage is $1,040.81. At the hearing, PHH took the position that Debtors were technically three months behind and would thus be subject to the conduit requirements of SC LBR 3015-1.

As reflected in PHH's Proof of Claim, and pursuant to the testimony provided at the hearing, as of January 2, 2024, Debtors had not paid their mortgage for the months of October, November, and December of 2023. On January 2, 2024, they rendered a mortgage payment which PHH applied to the October 2023 payment, thus leaving the November and December payments outstanding. The January 2024 mortgage payment was not made until January 30, 2024; accordingly, as of January 8, 2024—the Petition Date—Debtors were three mortgage payments behind, without accounting for the postpetition January 2024 payment. Debtors then continued making their monthly payments to remain current. According to Moss, PHH's filing of this proof of claim with a higher arrearage amount owed made it necessary for Debtors to amend their plan.

---

[10] Counsel for PHH advised the Court at the hearing that PHH's records reflect that Debtors made a payment of $1,044.21 on January 2, 2024, and another payment on January 30, 2024, which was held in suspense.
[11] The PHH Proof of Claim breaks down the arrearage as follows: (a) $1,122.06 as principal due; (b) $1,071.84 in interest; (c) $340.92 as prepetition fees due; (d) $197.34 as escrow deficiency for funds advanced; and (e) $1,838.48 in projected escrow shortage.

4

Whether Debtors' plan should have been a conduit plan or not, however, is not at issue here and not relevant to the issue of whether Moss complied with the SC LBR 9011-4 of this Court and Bankruptcy Rule 9011.

On April 8, 2024, Moss, using his CM/ECF credentials, filed an amended plan on Debtors' behalf which proposes that ongoing mortgage payments, including pre-petition arrears of $4,535.60, will be paid and cured by the Trustee (the "Conduit Plan").[12] The Conduit Plan, bearing Moss' signature, includes Debtors' electronic "/s/" signatures. On May 14, 2024, Moss filed an Amended Schedule J[13] and a Payment Increase Stipulation—both signed by Moss and also bearing Debtors' electronic signatures.[14] The Amended Schedule J includes two separate declarations, both purportedly signed by Debtors using their electronic signatures on May 14, 2024: (1) the Declaration Concerning Debtor's Schedules, which states that "I declare that I have read the foregoing Amended Schedule J and it is true and correct to the best of my knowledge, information, and belief," and (2) Official Form 106Dec, Declaration About an Individual Debtor's Schedules, which states, "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct." The Payment Increase Stipulation, which also includes Debtors' /s/ signature, adjusts Debtors' plan payments to $1,259.00 per month for 4 months, to be followed by $2,510.00 per month for 56 months—nearly double the amount of their prior plan payment. Based upon the representations made in these documents, the Court entered an order confirming the Conduit Plan without objection and as recommended by the Trustee on May 16, 2024.[15]

---

[12] ECF No. 22.
[13] ECF No. 25.
[14] ECF No. 26.
[15] ECF No. 27.

5

Debtor Ernestine Lucas ("Ms. Lucas") testified[16] at the hearing that she discovered she would be making an increased payment, including all mortgage payments through the Trustee, on May 15, 2024, after receiving a voicemail from staff at the Firm. She stated she did not discuss or agree to the Conduit Plan prior to May 15, 2024. She further testified she did not sign the Conduit Plan and did not give any verbal authorization for Moss to file the Conduit Plan, nor did she provide an electronic signature on the document. According to Ms. Lucas, she also did not consent to her signature on the Payment Increase Stipulation or Amended Schedule J. At some point in May—after May 15, 2024—she spoke with Moss regarding the possibility of doing a plan modification to lower her payments to the Trustee. According to Ms. Lucas, Moss told her to contact the mortgage company to determine what they needed to pay to become current with their mortgage. If they became current, he indicated he would file a motion to modify the plan to allow Debtors to pay the mortgage directly. Despite the Conduit Plan, Ms. Lucas testified that they continued to make payments directly to PHH from May through June 2024, and August through September 2024.[17] The Trustee made a payment to PHH in July of 2024.

According to Ms. Lucas, Debtors scheduled telephone appointments with Moss for June 26, 2024, July 18, 2024, and July 24, 2024, to discuss modifying their Conduit Plan, but Moss did not keep the appointments.[18] Ms. Lucas testified that she sent an email to Moss on July 10, 2024, copying the Trustee, stating that she had been emailing and trying to contact Moss staff since May to get the conduit issue resolved. She received an email from a paralegal at the Firm in response on July 11, 2024.[19] She sent a second email to a paralegal at the Firm on July 15, 2024, raising

---

[16] Ms. Lucas was also cross-examined by Moss.
[17] According to the mortgagee's counsel, PHH's records reflect that Debtors were due for the August 1, 2024 payment as of the date of the hearing.
[18] Ms. Lucas testified that she learned after she filed the Correspondence that Moss had been ill at the time of the July 24, 2024 appointment.
[19] The contents of this email, which was not presented into evidence, are unclear. Ms. Lucas agreed that the email was detailed but did not discuss its subject matter.

6

her concerns that Moss should have shared the possibility of a conduit plan with them prior to filing for bankruptcy and stating that they did not find out about the Conduit Plan until May of 2024, when they received a notice from the Court. In that email, she requested that Moss file a motion to have the mortgage payment removed from the plan. She testified that she had difficulties communicating with the Firm, and Moss never filed the motion to modify the plan as requested.

On July 31, 2024, Debtors filed the Correspondence seeking termination of Moss's representation agreement based upon his repeated failure to communicate, cancellation of appointments, and failure to disclose to Debtors that their mortgage payments were being added to a conduit plan. In response, the Court issued the Order, requiring Debtors and Moss to appear at the hearing on September 10, 2024. The Order further required Moss to file by August 30, 2024: (1) a copy of the Amended Plan and Pay Increase Stipulation with Debtors' "wet signature" or documented proof of their consent to the filing of the documents as required by SC LBR 9011-4, and (2) an affidavit setting forth payments received directly from Debtors or through the Chapter 13 Trustee related to services provided in connection with this case. Moss did not file these documents or any other response prior to the August 30, 2024 deadline nor at any time thereafter.[20] At the hearing on September 10, 2024, Moss affirmed that the Firm does not have Debtors' wet signatures or any documentation memorializing their consent to the Conduit Plan, the amended Schedule J, and Pay Increase Stipulation.

At the conclusion of her testimony, Ms. Lucas acknowledged that she had received a refund of $2,533.60 from Moss for attorney's fees, the filing fee, and all fees paid to Moss through the

---

[20] With the Voluntary Petition, Moss did file a Disclosure of Compensation of Attorney for Debtors indicating he had agreed to accept $4,300.00 in fees for representing Debtors and disclosing that he had received $686.00 prior to the Petition Date, while the remainder would be paid through the plan. *See* ECF No. 1. On March 20, 2024, Moss supplemented the Disclosure of Compensation to reflect the agreement with Debtors to accept $4,485.00 for the legal services and disclosing receipt of $871.00 in fees prior to the Petition Date. *See* ECF No. 17. However, the supplemental disclosure was subsequently withdrawn on May 7, 2024 as being "filed in error." *See* ECF No. 24.

7

plan. Debtors' new counsel, Held, advised the Court at the September 10, 2024, hearing that Debtors have agreed to seek dismissal of their bankruptcy case so they can file a new bankruptcy case and propose a non-conduit plan. A Motion was later filed and a dismissal order entered on September 16, 2024. The dismissal order provided:

> This case shall remain open for 70 days following the entry of this Order, as may be further extended by the Court, for the United States Trustee to conduct discovery related to the actions of Debtors' former counsel and seek further relief or sanctions as may be appropriate. Regardless of the disposition of this case, the Court retains jurisdiction to consider and rule on issues related to Debtors' former attorney's conduct and impose sanctions as deemed necessary.

## DISCUSSION AND CONCLUSIONS OF LAW

The Court's authority to regulate the litigants that appear before it and to address improper conduct is well-recognized. *See Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991) (discussing the inherent authority of courts to regulate litigants); *In re Weiss,* 111 F.3d 1159 (4th Cir. 1997) ("A federal court also possesses the inherent power to regulate litigants' behavior and to sanction a litigant for bad-faith conduct."); *In re Haynes,* No. 23-03130-eg, ___ B.R. ___, 2024 WL 3993313 (Bankr. D.S.C. Aug. 9, 2024); *In re Ulmer,* 363 B.R. 777 (Bankr. D.S.C. 2007). Section 105(a) of the Bankruptcy Code authorizes the Court to:

> [I]ssue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Pursuant to Rule 5005(a)(2) of the Federal Rules of Bankruptcy Procedure, "[a]n entity represented by an attorney shall file electronically" and "[a] filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a

8

signature block, constitutes the person's signature." Fed. R. Bankr. P. 5005(a)(2)(A), (C); *see also* SC LBR 5005-4.  When counsel for the debtor files a document electronically on the debtor's behalf with an electronic signature—such as the Conduit Plan filed in this case—the Local Rules of this Court require counsel to obtain, *prior to filing*, either (1) the original, "wet" signature of the debtor or (2) express documented permission from the debtor to include her signature on the document.  SC LBR 9011-4(a)(1) (providing that "[t]he filing of the document(s) by the CM/ECF filer ***constitutes a certification that the filer obtained, prior to filing, either the original, physical signature or express documented permission from the signer to affix the signer's signature to the document and file it***, and that the filer has verified that the authorizing signer is in fact the signer") (emphasis added).  SC LBR 9011-4(a)(2) further requires:

> Unless otherwise provided by statute, rule, or order, the CM/ECF Participant is not required to obtain or retain original signatures where the signer has expressly authorized in writing or electronically that the document be filed with that signer's digital or electronic signature affixed. However, ***the filer must retain sufficient evidence of the signer's permission to sign a particular document* and the document's contents** as follows: if the case is dismissed, for a period of three (3) years; or if not dismissed, until the case or adversary proceeding is closed and the appeal time has passed and, if applicable, the time within which a discharge of the debtor may be revoked has passed. Under order of the Court, such documents must be provided for review to parties.

(emphasis added).

Moss admitted at the hearing that he did not have documented evidence of Debtors' express permission to sign the Conduit Plan, Amended Schedule J, and the Payment Increase Stipulation on their behalf.  He also admitted he did not have the original signature on any of these documents.  Further, Debtors—who brought these issues to the attention of the Court—have asserted their objection to the filing of the documents bearing their signatures and the corresponding results.  Based on the evidence presented, the Court finds that Moss violated SC LBR 9011-4.

The Court further concludes that Moss violated Fed. R. Bankr. P. 9011(b)(3), which requires, in part, that when an attorney files a document with the court, that person is certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"  Sanctions may be imposed on an attorney or law firm that violates Rule 9011(b).  Fed. R. Bankr. P. 9011(c); *see also In re Brock,* No. 04-08646-W, 2004 WL 7197433, at *3 (Bankr. D.S.C. Oct. 13, 2004) (finding that an attorney's filing of a voluntary petition on behalf of the debtor's wife without consulting with her directly to confirm that she desired to file for bankruptcy constituted a violation of Rule 9011).  A sanction imposed under Rule 9011 "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated" and "may consist of, or include, directives of a nonmonetary nature" and "an order to pay a penalty into court[.]"  Fed. R. Bankr. P. 9011(c)(2).

In this case, by presenting the Conduit Plan, Amended Schedule J, and Payment Change Stipulation with Debtors' electronic signatures and his own, Moss was certifying to the Court that Debtors had agreed to those documents being filed on their behalf.  Ms. Lucas testified that she did not give Moss or the Firm permission to file those documents.  Moss did not produce any evidence to the contrary, despite being ordered to do so.  Accordingly, Moss' certification amounted to a false representation of the facts.  Notably, one of the documents that Moss signed on Debtors' behalf without their express consent was the Amended Schedule J, which is to be signed by a debtor *under penalty of perjury*.  To make such certification without express consent

10

is simply unjustifiable and raises serious concerns which are being investigated further to determine whether other sanctions or further relief is necessary.

This Court has recently addressed similar improper conduct by Moss and issued sanctions against him and his Firm in *In re Haynes,* C/A No. 23-03130-eg,[21] and *In re Johnson,* C/A No. 19-00890-hb.[22] In *Haynes*, the debtor similarly complained that an amended plan electing to surrender her home had been filed by Moss and confirmed without her consent. *In re Haynes,* 2024 WL 3993313, at *1. Moss acknowledged that he did not retain sufficient evidence of the signer's permission to sign the amended plan on the debtor's behalf and admitted that he did not have the original signatures on the amended plan or any documentation of the debtor's verbal consent and agreement for Moss to affix her electronic signature on the document. *Id.* at *5. Based on the record, the Court concluded that Moss violated SC LBR Rule 9011-4(a)(1) and (2) and ordered Moss to return all funds paid to the Firm on behalf of Debtor relating to the bankruptcy case. *Id.*

In *Johnson,* the debtors notified the Court that a Certification of Plan Completion and Request for Discharge had been filed on their behalf by the Firm—using Moss' CM/ECF credentials—without their authorization. *In re Johnson,* 2024 WL 4201980, at *1. The Court held that the Firm violated SC LBR 9011-4 by filing the Certification without having express documented permission from the debtors to affix their signatures and by failing to provide documentation of such authorization upon order of the Court. *Id.* at *3. To deter similar conduct

---

[21] C/A No. 23-03130-eg, slip op. (Bankr. D.S.C. Aug. 9, 2024).
[22] *In re Johnson,* ___ B.R. ____, 2024 WL 4201980, at *1 (Bankr. D.S.C. Aug. 28, 2024). *See also In re Deborah Sumter Jefferson*, Case No. 18-01907-EG, slip op. (Bankr. D.S.C. July 20, 2023) (ECF No. 129). In *Jefferson*, the UST raised concerns about statements that the debtor made in that case while testifying at a Bankruptcy Rule 2004 examination regarding advice she had received from Counsel. In the stipulated consent order, among other things, it was agreed that Counsel "shall endeavor to communicate with his clients clearly and in reasonably understandable ways." *Id.* at B.

by the Firm in the future, the Court ordered the Firm to pay a $1,000.00 sanction to the debtors in that case. *Id.* at *4.

Further, in this case Moss failed to comply with the Order which clearly indicated—in bold type—that "Moss shall also file with the Court by the August 30, 2024 deadline (a) a copy of the Plan and Pay Increase Stipulation with Debtors' "wet signature' or documented proof of their consent to the filing of the documents as required by SC LBR 9011-4, and (b) an affidavit setting forth payments received directly from Debtors or through the Chapter 13 Trustee related to services provided in connection with this case."  While the Court acknowledges that there was nothing to present to the Court in response to (a), as Moss admitted he did not possess such documents, Moss disregarded the Court's Order by failing to provide an affidavit as required of all fees received, and instead waited until the hearing to inform the Court that he had voluntarily returned all fees to Debtors.  At the hearing, he did not provide any explanation or excuse for failing to further abide by the Court's Order.

The Court urges Moss to immediately review the Firm's procedures with his staff and take measures to ensure that client authorization is obtained ***prior to*** filing documents containing their electronic signatures and is appropriately documented for all future filings requiring client authorization.[23]  Considering the egregious nature of Moss' conduct in this case and the apparent pattern of this conduct in other cases in which Moss has been retained as counsel, Moss is directed to return all funds received by or on behalf of Debtors—to the extent not already done—<u>and</u> to pay sanctions in the amount of $4,000.00 to Debtors.  The sanction amount has been determined based upon Moss' filing of three separate documents without Debtor's prior authorization together

---

[23] To be clear, this Order in no way limits the imposition of further sanctions as may be sought with respect to this or other cases where Moss similarly failed to comply with the Bankruptcy Rules.

12

with Moss' disregard for the provisions in the Order requiring him to file an affidavit, which he failed to do without providing any excuse or explanation.

   **IT IS THEREFORE ORDERED**:

1. To the extent not previously paid to Debtors, Moss shall return all funds paid to him or the Firm by or on behalf of Debtors relating to this bankruptcy case within five (5) days of the entry of this Order, and no further funds shall be disbursed to Moss or the Firm by the Trustee in this case;[24]

2. Moss is directed to pay sanctions in the amount of **$4,000.00** to Debtors Brian Lucas and Ernestine Lucas **within fifteen (15) days of the entry of this Order** and shall file proof of Debtors' receipt of such funds **within twenty (20) days of the entry of this Order.  However, this amount is a sanction imposed by the Court and should not be construed as resolving any disputes that may exist between Moss and Debtors**;

3. The relief granted herein is without prejudice to the United States Trustee's right to request further relief as set forth in the Order Dismissing Case on Motion of Debtors entered September 16, 2024; and

4. **The Clerk's Office is hereby directed to serve a copy of this Order on Debtor, the United States Trustee, <u>and</u> the South Carolina Office of Disciplinary Counsel.**

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**10/01/2024**



Entered: 10/01/2024

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

---

[24] A Consent Order regarding disbursement of funds by the Trustee was entered on September 18, 2024, which is consistent with this Order. *See* ECF No. 53.